UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| J.L. COLES, dba SELECT EQUIPMENT LEASING CO., | Civil No. 05-219-HA |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| MAVIS OARD, dba OARD'S SERVICE AND GARAGE, | |
| Defendant. | |

HAGGERTY, Chief Judge:

Plaintiff J.L. Coles (Coles), doing business as Select Equipment Leasing Co. (plaintiff or Select), filed a Complaint on February 15, 2005, alleging fraud, conversion, and money had and received. On May 16, 2005, this court granted in part defendant's Motion to Dismiss and ordered plaintiff to submit a more definite Complaint setting forth each alleged claim and its elements with sufficient particularity. On June 1, 2005, plaintiff filed a Corrected First Amended Complaint (hereinafter referred to as the First Amended Complaint), and on June 24, 2005, defendant filed a second Motion to Dismiss (Doc. #20),

1 – OPINION AND ORDER

which is currently before the court. In this motion, defendant moves for an order dismissing the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of diversity jurisdiction under 28 U.S.C. § 1332, or, in the alternative, for an order requiring plaintiff to make its First Amended Complaint more definite and certain pursuant to Federal Rule of Civil Procedure 12(e). For the reasons that follow, defendant's motion is denied.

## FACTUAL BACKGROUND

The following facts are taken from the First Amended Complaint. Coles is a citizen of California, and Select's principal place of business is in California. Defendant Mavis Oard (Oard), doing business as Oard's Service and Garage (defendant or Oard's), is a resident of Burns, Oregon. Ray W. Anderson (Anderson) is also a resident of Burns, Oregon, and is the sole owner of AAA Land and Livestock, Inc. (AAA). Neither Anderson nor AAA is party to this action.

On November 21, 2002, plaintiff entered into a written lease agreement with AAA, whereby plaintiff agreed to lease certain equipment (the Equipment) to AAA. Pursuant to the lease agreement, three out of the four items were required to be new equipment. Upon the advice of Anderson, plaintiff arranged to purchase the Equipment from Oard's. The purchase price was $33,000, and Oard's represented to plaintiff that the items of equipment were new. Unknown to plaintiff at the time, the Oard's agent through which plaintiff ordered the Equipment was Anderson's brother-in-law.

On November 19, 2002, defendant submitted invoices to plaintiff for the Equipment. On November 26, 2002, defendant submitted an Acceptance of Delivery to plaintiff, which indicated that defendant had delivered the Equipment to AAA. The Acceptance of Delivery was signed by Anderson on behalf of AAA but was not signed by defendant.

Pursuant to a broker agreement, plaintiff was also required to purchase a lease

2 – OPINION AND ORDER

between Manifest Funding Services (Manifest) and AAA (the Manifest lease) for equipment similar to that under plaintiff's lease with AAA (the Manifest Equipment). The purchase price of the Manifest Equipment was $30,000. Plaintiff alleges that the Manifest Equipment was not new equipment, despite Oard's representations to the contrary.

Plaintiff alleges that the Equipment and the Manifest Equipment were actually manufactured by Anderson, or that they were never manufactured at all. Plaintiff also alleges that the money plaintiff and Manifest paid to Oard's either was used by Anderson to fund the manufacture and marketing of the Equipment and the Manifest Equipment or was used by Anderson and defendant for their own purposes.

As to its fraud claim, plaintiff seeks the following damages: $45,580, which is the amount remaining to be paid to plaintiff pursuant to the lease agreement between plaintiff and AAA; $946 in late charges on the lease agreement between plaintiff and AAA; and $40,210.50, which is the amount remaining to be paid to plaintiff on the Manifest Lease. This amounts to a total of $86,736.50. Plaintiff also seeks $86,736.50 for its conversion claim and $86,736.50 for its claim of money had and received.

## ANALYSIS

Defendant moves to dismiss the First Amended Complaint under 28 U.S.C. § 1332 for lack of diversity jurisdiction based on insufficient amount in controversy. Alternatively, defendant moves for an order requiring plaintiff to make its complaint more definite and certain.

**A. Motion to dismiss for lack of diversity jurisdiction**

This court has diversity jurisdiction only "where the matter in controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332. When a claim is filed in federal court

3 – OPINION AND ORDER

based on diversity jurisdiction and a defendant moves to dismiss the case for want of jurisdiction, the court must determine whether it appears "to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Saint Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). In its previous motion, defendant argued that plaintiff had failed to establish diversity jurisdiction because it could not show damages over $75,000. The court denied this portion of defendant's previous motion. Because the First Amended Complaint clarifies plaintiff's allegations and both parties have had the opportunity to present case law in support of their interpretations, the court grants defendant's request to revisit this issue.

1. Article 2 of the Uniform Commercial Code (UCC)

Defendant argues that plaintiff's claim for fraud "is really a UCC Article 2 claim disguised as fraud." Def.'s Mot. to Dismiss Am. Compl. at 5. According to defendant, plaintiff's allegations against defendant relate only to the Equipment plaintiff purchased from defendant and not to AAA's breach of the lease agreement. Therefore, defendant argues, plaintiff's damages could be at most $33,000 — the amount plaintiff paid to defendant to purchase the Equipment. *See* O.R.S. 72.7140 (limiting buyer's measure of damages for nonconforming, accepted goods to the difference between the value of the goods accepted and the value they would have had if the goods had been as warranted).[1] Defendant further argues that, even including plaintiff's alleged damages based on the $30,000 Manifest paid to Oard's related to the Manifest Lease, plaintiff's damages amount

---

[2] The court notes that although O.R.S. 72.7140 limits damages as argued by defendant and described above, it also contains an exception where "special circumstances show proximate damages of a different amount." O.R.S. 72.7140(2). Plaintiff has not alleged any damages under this provision, and the court does not offer an opinion as to whether the situation here would constitute "special circumstances."

only to $63,000, which would not satisfy the amount in controversy requirement of 28 U.S.C. § 1332.

Plaintiff, on the other hand, argues that Article 2 of the UCC does not govern the relationship between plaintiff and defendant because this dispute arose out of a finance lease, not a sale of goods between a buyer and a seller. Plaintiff asserts that finance leases are governed by O.R.S. Chapter 72A and that, under O.R.S. 72A.5230, plaintiff would be entitled to its full contract damages, including lost profits.

The court disagrees with plaintiff's interpretation of this statute. O.R.S. 72A.5230 is titled "Lessor's remedies" and provides for the lessor's options when "a lessee wrongfully rejects or revokes acceptance of goods or fails to make a payment when due or repudiates with respect to a part or the whole . . . . " O.R.S. 72A.5230(1). The statute also provides that "the lessor may recover the loss resulting in the ordinary course of events from the lessee's default as determined in any reasonable manner, together with incidental damages, less expenses saved in consequence of the lessee's default." O.R.S. 72A.5230(2).

Clearly, this provision supplies remedies to a *lessor* based on the default of a *lessee*. Here, plaintiff is the lessor and AAA, not defendant, is the lessee. *See* First Am. Compl., Ex. 1 at 1 ("LESSEE: AAA LAND & LIVESTOCK, INC. . . . . LESSOR: SELECT EQUIPMENT LEASING"). While "Oard's Service and Garage" is listed on the lease agreement as the "Supplier of Equipment," the lease agreement is signed only by Ray Anderson on behalf of AAA and J.L. Coles on behalf of Select. *Id.* There is no indication, and indeed no argument by plaintiff, that defendant was a party to the lease agreement. For this reason, the court does not see how O.R.S. 72A.5230 provides for damages to plaintiff based on defendant's actions.

Plaintiff also argues that, even if the UCC governs this transaction, under O.R.S.

5 – OPINION AND ORDER

72.7190(1)(b), the remedies provided by the UCC are not plaintiff's exclusive remedies. This may be true, but the court disagrees with plaintiff's interpretation of the relevant statute and fails to see what other remedies plaintiff has in mind. O.R.S. 72.7190 is titled "Contractual modification or limitation of remedy" and provides as follows:

> (1) Subject to the provisions of subsections (2) and (3) of this section and of ORS 72.7180 on liquidation and limitation of damages:
>
> (a) The agreement may provide for remedies in addition to or in substitution for those provided in this chapter and may limit or alter the measure of damages recoverable under this chapter, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and
>
> (b) Resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

O.R.S. 72.7190.

A UCC Comment to this provision explains that "Subsection (1)(b) creates a presumption that clauses prescribing remedies are cumulative rather than exclusive. If the parties intend the term to describe the sole remedy under the contract, this must be clearly expressed." *Id.* Therefore, O.R.S. 72.7190 takes effect only when an agreement between two parties provides for certain remedies. In such a situation, this provision operates to clarify that the remedies provided for in the agreement are not the exclusive remedies available to the injured party, unless the agreement states otherwise. For this provision to apply here, then, there would have to be an agreement between plaintiff and defendant providing for certain remedies. Because no such agreement is present, the court sees no way in which this provision is applicable.

2. Common law fraud

Next, defendant argues that even if the court permits plaintiff to proceed with its common law fraud claim, plaintiff is limited to its out-of-pocket damages, which do not

6 – OPINION AND ORDER

exceed $75,000. Plaintiff concedes that the out-of-pocket rule applies in fraud claims involving *real property*, but argues that in cases involving *personal property* a plaintiff is not limited to out-of-pocket damages. Rather, plaintiff argues, in such cases the measure of damages must remain flexible to fully compensate the plaintiff for injuries proximately caused by the fraud.

It is well established in Oregon that, in an action for fraud, a plaintiff's recovery is limited to the out-of-pocket rule, "unless the actionable misrepresentation was a warranty of value, in which case plaintiff could recover under the 'benefit-of-the-bargain' rule." *Galego v. Knudsen*, 573 P.2d 313, 318 (Or. 1978) (citing *Selman v. Shirley*, 85 P.2d 384, 91 P.2d 312 (Or. 1939)). Out-of-pocket damages are measured by the difference between the purchase price of the property and the fair market value of the property on the date of sale. *Pape v. Knoll*, 687 P.2d 1087, 1096 (Or. App. 1984).[2]

In supporting its argument that the out-of-pocket rule does not apply to personal property, plaintiff incorrectly quoted two cases. Plaintiff inserted the word "real" in its parenthetical quotations from *Julian-Ocanpo v. Air Ambulance Network, Inc.,* 2001 U.S. Dist. LEXIS 10986 (D. Or. 2001), and *Beckett v. Computer Career Institute, Inc.*, 852 P.2d 840, 844 (Or. App. 1993). Indeed, if these cases read as plaintiff represents them to read — which is to say, as specifically addressing "real property" rather than "property" more generally — plaintiff's argument would be much stronger. However, misrepresenting case law to the court is not an appropriate method of advocacy. Furthermore, it is difficult to

---

[2] Benefit-of-the-bargain damages are determined by the difference between the actual value of the property received and what its value would have been had the representations been true. *Galego*, 573 P.2d at 318 n.4. However, because plaintiff has not alleged that defendant's misrepresentation was a warranty of value, this measure of damages does not apply here.

7 – OPINION AND ORDER

understand how this type of error could have occurred inadvertently, since it involves insertion of a word that is not in the original text — rather than simply unwittingly omitting a word — and because it happened two times. The court cautions plaintiff's counsel that knowingly making misrepresentations to the court is grounds for dismissal of plaintiff's claims with prejudice.

The court will now address the legal issue presented here: in cases of fraud involving personal property in Oregon, is a plaintiff's recovery limited to out-of-pocket damages, or may the measure of damages be flexible to compensate the plaintiff for whatever loss has been suffered? If plaintiff is limited to out-of-pocket damages, this will be measured as the difference between the price plaintiff paid for the Equipment ($33,000) and the fair market value of the Equipment when it was purchased.[3] As to the Manifest Equipment, also assuming it had no value when purchased, plaintiff's out-of-pocket damages would be $30,000. Therefore, plaintiff's total out-of-pocket damages would be limited to $63,000. On the other hand, if plaintiff is not limited to out-of-pocket damages, its allegation that it suffered $86,736.50 in damages as a proximate result of defendant's fraudulent representations will suffice to establish jurisdiction based on this claim.

Both parties cite to *Dizick v. Umpqua Community College*, 599 P.2d 444 (Or. 1979) (en banc) in support of their positions. In *Dizick,* the plaintiff, a student, brought an action based on fraudulent representations by the defendant college that if the plaintiff enrolled in the college he would be taught advanced welding. *Id.* at 445. The plaintiff also alleged that if he had not enrolled in the college he would have continued to work and earn wages. *Id.* at 448. The jury delivered a verdict in favor of the plaintiff and awarded damages measured

---

[3] The court assumes for the purposes of this motion only that the Equipment never existed. Therefore, the court assumes that the Equipment had no value at the time it was purchased.

by the amount of wages he did not earn during the time he was enrolled in the college. *Id.* at 445.

On appeal to the Supreme Court of Oregon, the defendant argued that the trial judge erred in permitting this measure of damages because only out-of-pocket damages and benefit-of-the-bargain damages are permissible in fraud cases. The court disagreed with the defendant and stated that where "the fraud does not involve the sale of property, the proper measure of damages must be flexible to compensate the plaintiff for whatever loss he has suffered." *Id.* at 449 (citing *Espaillat v. Berlitz Schs. of Languages of Am.*, 383 F.2d 220 (D.C. Cir. 1967)).

In stating this rule in *Dizick*, the court relied on *Espaillat,* where a jury returned a verdict in favor of the plaintiff on the plaintiff's claim that she was fraudulently induced to enter into an employment contract with the defendant. *Espaillat*, 383 F.2d at 221. The plaintiff's contract with the defendant was for a year's duration and called for compensation of $600 per month. *Id.* On appeal, the defendant assigned error to the trial court's jury instruction that plaintiff was entitled to an award that would "fairly and reasonably compensate her for all the damages she suffered as a result of this fraud." *Id.* The Court of Appeals for the District of Columbia Circuit upheld this measure of damages because "the doctrines of fraud and deceit which developed around transactions involving land and other tangible items of wealth are ill-suited to the sale of such intangibles as advice and securities . . . accordingly, the doctrines must be adapted to the merchandise in issue." *Id.* at 222 (citation omitted).

The *Espaillat* court explicitly stated that in fraud cases involving "the sale or exchange of property, *real or personal*," the governing rule is that the plaintiff's damages are the difference between the amount the plaintiff paid for the property and the value of the

9 – OPINION AND ORDER

property that he or she received. *Id.* (emphasis provided). Based on this, the court agrees with defendant that, in *Dizick*, the Oregon Supreme Court intended to incorporate the entire rule from *Espaillat* — namely, that damages for fraud claims involving *real or personal property* are limited to out-of-pocket damages.

This conclusion is also supported by the *Dizick* court's reliance on *Elizaga v. Kaiser Foundation Hospital, Incorporated,* 487 P.2d 870, 874 (Or. 1971). In *Elizaga*, the court held that out-of-pocket and benefit-of-the-bargain damages were inapplicable to a claim of a fraudulently induced employment contract because in such a case there was "no real value" to the compensation to be paid. *Id.* Therefore, the court approved the trial court's jury instruction that the measure of damages was the amount of money that would compensate the plaintiff for the actual salary loss he suffered as a result of the fraudulent misrepresentation. *Id.*

Plaintiff has cited to no cases in which an Oregon court applied the "flexible" approach to damages to cases of fraud involving real property, which, of course, does have "real value." Rather, all of the cases cited by plaintiff involve fraudulent services. *See, e.g., Dizick*, 599 P.2d at 445 (the plaintiff alleged that the defendant institution fraudulently induced plaintiff to enroll by promising certain types of training which were never available); *Bramel v. Brandt*, 79 P.3d 375, 381 (Or. App. 2003) (the plaintiffs brought a fraud action against their former attorneys alleging that the attorneys failed to disclose the existence and terms of a retainer agreement the attorneys signed with the plaintiffs' opposing party); *Beckett*, 852 P.2d at 841 (the plaintiff brought claims based on the defendant institution's alleged misrepresentations regarding the placement rate for its graduates); *Julian-Ocanpo,* 2001 U.S. Dist. LEXIS 10986, *11 (D. Or. 2001) (the plaintiff alleged fraudulent misrepresentations by the defendant air ambulance service provider).

10 – OPINION AND ORDER

Furthermore, as explained above, this court looks negatively on plaintiff's alterations of these cases to support its position, whether or not the alterations were inadvertent. For these reasons, the court finds that plaintiff's fraud claim does not allege damages over $75,000.

3. Plaintiff's claims for conversion and money had and received

The First Amended Complaint also includes claims for conversion and money had and received. As with plaintiff's fraud claim, the court finds that neither of these claims independently supports damages over $75,000. Plaintiff's claim for conversion alleges:

> Oard's exercised dominion and control over the money paid by Select and Manifest that so seriously interfered with the rights of Select and Manifest to control it that Oard's is justly required to return the money to Select. Select and Manifest relied on the representations of Oard's that it was selling equipment that existed and/or was new. Oard's representations were false, yet Oard's accepted the money from Select and Manifest, allowing Anderson to use the money for other purposes and/or using the money herself for other purposes.

First Am. Compl. ¶ 23. There is no allegation anywhere in the First Amended Complaint that plaintiff or Manifest ever paid more than $33,000 and $30,000, respectively, to Oard's. Therefore, plaintiff's damages for this claim are limited to $63,000.

Plaintiff's claim for money had and received alleges:

> Oard's wrongfully appropriated Select's and Manifest's money and was thereby unjustly enriched. Oard's took Select's and Manifest's money, knowing that the representations that it made regarding the use of that money were false.

First Am. Compl ¶ 26. As explained above, plaintiff and Manifest did not pay more than $63,000 to Oard's. Therefore, this claim is also limited to damages of that amount.

When a single plaintiff brings more than one claim against a single defendant, the general rule is that the value of all the claims may be aggregated in order to determine whether the requisite jurisdictional amount in controversy has been satisfied. *See* 14b CHARLES ALAN WRIGHT, ARTHUR R. MILLER AND EDWARD H. COOPER, FEDERAL PRACTICE

11 – OPINION AND ORDER

AND PROCEDURE § 3704 (3d ed. 1998); *see also Rake v. City Lumber Co. of Bridgeport*, 283 F. Supp. 870, 872 (D. Or. 1967) (where one plaintiff brought multiple claims against a sole defendant, "the total of the claims, regardless of their nature, is the determining jurisdictional factor, rather than the figures set forth in each individual claim"). This rule, however, generally does not permit a plaintiff to aggregate claims that are redundant — that is, where there can be only one recovery. *See* 1A FEDERAL PROCEDURE, LAWYERS EDITION: ACCESS TO DISTRICT COURTS (Janice L. Holben and David Zammiello eds., 2002) § 1:534 ("one claim pleaded in the alternative under separate legal theories cannot be aggregated for jurisdictional purposes").

Here, defendant argues that plaintiff's damages are limited to either $33,000 or $63,000 for its fraud claim, $33,000 for its conversion claim, and $33,000 for its claim of money had and received. Thus, if plaintiff's claims are aggregated, plaintiff has alleged damages of at least $99,000. Because neither party has addressed the issue of whether plaintiff's claims are redundant under Oregon law, it would be premature for this court to make this determination at this point. Therefore, the court cannot find to a legal certainty that plaintiff cannot allege damages over the jurisdictional amount, and defendant's motion to dismiss for lack of sufficient amount in controversy is denied.

**B. Motion for a more definite statement**

Defendant argues that plaintiff should be required to make Paragraphs 10, 11, 12, 13, and 14 more definite and certain. Federal Rule of Civil Procedure 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have

12 – OPINION AND ORDER

done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671-72 (9th Cir. 1993) (citation omitted). The plaintiff must also set forth an explanation as to why the statement or omission complained of was false or misleading. *In re Glenfed, Inc. Secur, Litig.,* 42 F.3d 1541, 1548 (9th Cir. 1994). "[W]hile mere conclusory allegations of fraud are insufficient, statements of the time, place, and nature of the alleged fraudulent activities are sufficient." *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir. 1987) (citations omitted).

Here, the First Amended Complaint alleges fraud based on: Oard's representations in the Acceptance of Delivery it submitted to AAA on or about November 26, 2002 (Paragraph 10); Oard's representations in the invoices it submitted to Select on November 19, 2002 (Paragraph 11); and Oard's representations to AAA in the invoice Oard's delivered to Manifest on September 26, 2002 (Paragraphs 12, 13, and 14).

Defendant argues that Paragraph 10 is insufficiently plead because the Acceptance of Delivery is not signed by defendant and, therefore, could not constitute a representation. The court disagrees. Paragraph 10 states: "On or about November 26, 2002, Anderson and Oard's represented to Select that the three (3) items of Equipment Select purchased from Oard's, were existing and new by signing and submitting to Select the Acceptance of Delivery." First Am. Compl. ¶ 10. This allegation provides defendant with the time, place, and manner of the allegedly fraudulent representation, and the fact that defendant disagrees that such an act constituted a representation — or disagrees that it was made at that time, in that place, or in that manner — goes to the merits of the dispute.

Defendant argues that Paragraphs 11 and 13 are not sufficiently plead because the respective invoices do not contain the word "new," despite plaintiff's allegation that Oard's represented that the equipment was new. While the court agrees with defendant that the invoices referred to in Paragraphs 11 and 13 do not contain the word "new," these

13 – OPINION AND ORDER

allegations are nonetheless sufficient to satisfy Rule 9(b) because they put defendant on notice of the allegedly fraudulent misconduct — namely, that the invoices submitted to Select and to Manifest represented that the Equipment and the Manifest Equipment were new. As explained above, any dispute about whether these invoices actually represent what plaintiff alleges they represent goes to the merits of this case, not to the sufficiency of the pleadings.

Defendant argues that Paragraph 12 is not sufficiently plead because plaintiff did not attach a copy of the Manifest Lease to the First Amended Complaint. The court disagrees and finds that plaintiff was not required to attach a copy of the lease to the First Amended Complaint.

Defendant argues that Paragraph 14 is not sufficiently plead because it does not include the actual value of the Equipment or the Manifest Equipment. Paragraph 14 states: "The Equipment and the Manifest Equipment were actually manufactured by Anderson (to the extent any equipment was manufactured)." First Am. Compl. ¶ 14. If this allegation stood alone, the court would agree that it is not sufficient to support plaintiff's fraud claim. However, this is simply one factual allegation in support of plaintiff's fraud claim and merely provides a specific allegation as to the origin of the Equipment and the Manifest Equipment. It is sufficiently specific as to time, place, and manner to permit defendant to respond to whether Anderson actually manufactured the Equipment and the Manifest Equipment.

Finally, defendant argues that Paragraphs 16, 17, 18, and 19, are not sufficiently specific because they refer only generally to Oard's "representations." Because these allegations clearly refer to the representations described in the previous paragraphs, defendant's objections are overruled.

14 – OPINION AND ORDER

## **CONCLUSION**

For the aforementioned reasons, defendant's Motion to Dismiss (Doc. #20) is DENIED.

IT IS SO ORDERED.

Dated this _23rd day of August, 2005.

                                                /s/Garr M. King for
                                                 ANCER L. HAGGERTY
                                             United States District Judge